UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KINGSTONE INSURANCE COMPANY | ) | CASE NO. 3:22-CV-889 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARGARET BOTTONE, ET AL. | ) | FEBRUARY 27, 2024 |
| *Defendants*. | ) | |

<u>**MEMORANDUM OF DECISION RE: (ECF NO. 39)**</u>

Kari A. Dooley, United States District Judge:

This declaratory judgment action arises out an underlying state-court action in which it is alleged that an infant child sustained numerous life-threatening injuries as the result of abuse while in the care of Defendant Margaret Bottone ("Bottone"). Plaintiff Kingstone Insurance Company ("Kingstone" or "Plaintiff") seeks a declaratory judgment that under the terms of the homeowner's policy it issued to Bottone, it does not owe Bottone a duty to defend the underlying litigation nor indemnification should judgment enter against her. Plaintiff named as co-defendants Defendants J.M.N.M (the child), and Folk, McFadden, and Nelson, the child's biological and adoptive parents and the plaintiffs in the underlying state court action.[1] Plaintiff now moves for summary judgment as to all counts of its First Amended Complaint for Declaratory Judgment. For the reasons that follow, Plaintiff's motion is GRANTED.

**Standard of Review**

The standard under which courts review motions for summary judgment is well-established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[1] As will be discussed in greater detail, in the underlying litigation, Plaintiffs assert a number of claims against Bottone for which they seek economic and non-economic damages on behalf of the child as well as themselves.

Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," while a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the movant meets his burden, the nonmoving party "must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading" to establish the existence of a disputed fact. *Wright*, 554 F.3d at 266; *accord Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 888 (1990).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). "In deciding a motion for summary judgment, the district court's function is not to weigh the evidence or resolve issues of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002).

**Background and the Underlying Action[2]**

---

[2] The facts are taken from Kingstone's Complaint and from the parties' Local Rule 56(a) Statements and supporting exhibits. *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit for summary judgment purposes . . . ."). Local Rule 56(a)2 requires the party opposing summary judgment to submit a statement containing separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. Each denial must include a specific citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)3. The parties' Local Rule 56(a) statements do not meaningfully differ from each other. Indeed, while Defendant Bottone expressly denies that the allegations in the Underlying Action are true, she admits to every statement in Kingstone's Local Rule 56(a) Statement. *See* Def. Bottone's Statement of Facts in Opposition to Summary Judgment ("Def.'s LRS"), ECF No. 42-2.

Kingstone issued a homeowners policy to Margaret Bottone with an effective date of July 10, 2020 and an expiration date of July 21, 2021 (the "Policy"). Pl.'s Statement of Material Facts ("Pl.'s LRS"), ECF No. 39-2, ¶ 1. The policy contains, among other terms, a provision for personal liability which pays up to Kingstone's limit of liability for claims brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence," as those terms are defined in the Policy. *Id.* ¶ 2. As described *infra*, the Policy contains several exclusions and additional special provisions. *Id.* ¶¶ 3, 4.

On July 21, 2021, J.M.N.M. and Folk brought a lawsuit against Bottone in Connecticut state court (the "Underlying Action")[3] arising out of severe and life-threatening injuries J.M.N.M. allegedly sustained while under the care, custody, and control of Bottone and/or while at her home. A Third Amended Complaint was filed on December 2, 2022, adding McFadden and Nelson[4] as plaintiffs.

The First Count of the Third Amended Complaint, asserted by Folk against Bottone and titled Negligence, alleges as follows: in 2020, Folk gave birth to J.M.N.M. and on November 5, 2020, the State of Connecticut Department of Children and Families obtained an Order of Temporary Custody assigning J.M.N.M. to the care, custody, and control of Bottone. Bottone accepted the Order of Temporary Custody, and assumed parental duties to care for J.M.N.M, including protection, nourishment, safety, and development of the child while in her custody. The Count further alleges that on December 5, 2020, J.M.N.M. sustained acute, traumatic, and permanent injuries while under Bottone's care as a result of her negligent conduct. Specifically, the Count states that Bottone caused, allowed, and/or permitted J.M.N.M. to suffer acute, traumatic

---

[3] *J.M.N.M. f/k/a J.F. ppa Kayla Folk, et. al. v. Margaret Bottone*, NNH-CV21-6116054S (Conn. Super. Ct. filed July 30, 2021).
[4] McFadden and Nelson were legally named as the adoptive parents of J.M.N.M. on November 18, 2023. *Bottone*, NNH-CV21-6116054S, docket entry 108.00.

and permanent injuries while in her household; failed to supervise J.M.N.M. while he was in her care, custody and control, and failed to provide a safe and protective environment; caused, allowed and permitted other persons or family members access to participate in J.M.N.M.'s care and control, when in the exercise of reasonable care they should not have done so; failed to provide proper protection and safety to J.M.N.M.; and failed to care for him in a manner compliant with the Connecticut Department of Children and Families' guidelines concerning parental neglect and/or parental abuse. Bottone's negligent behavior is alleged to have resulted in J.M.N.M. sustaining skull/head/brain injuries, anoxic injury, hypoxic ischemic encephalopathy, subdural hemorrage to the spinal column, and developmental deficits. The Count further alleges that J.M.N.M. will incur medical expenses for medical care to treat these injuries, and that he will suffer a loss of earning capacity. Pl.'s LRS ¶ 13.

The Second, Third, and Fourth Counts of the Third Amended Complaint incorporate all the allegations of the First Count, *id.* ¶ 14, and seek specific damages on behalf of the plaintiff or plaintiffs named in those counts.

The Fifth Count of the Third Amended Complaint, asserted by Folk against Bottone, alleges a claim of loss of consortium and incorporates the allegations of the First Count. *Id.* ¶ 19. The Sixth Count alleges the same claim against Bottone by McFadden and Nelson. *Id.* ¶ 20.

The Seventh Count asserted by Folk Against Bottone alleges a claim for wantonness, recklessness, and/or maliciousness, partly incorporates the allegations of the First Count, and adds that on or about December 5, 2020, J.M.N.M. sustained acute, traumatic, and permanent injuries while in the care, custody, and control of Bottone caused by her wanton, reckless, and/or malicious acts including physical abuse and or/physical neglect while serving in her position as a foster parent of J.M.N.M. *Id.* ¶ 21. The Count additionally alleges that as a result of the wanton, reckless,

and/or malicious acts of Bottone, J.M.N.M. sustained the injuries and losses described in the First Count. *Id.* The Eighth Count alleges the same claim against Bottone by McFadden and Nelson. *Id.* ¶¶ 23-24. The Ninth Count asserted by Folk against Bottone alleges a claim for loss of consortium, incorporating allegations from the Seventh and Third Counts. *Id.* ¶ 25. The Tenth Count alleges the same claim against Bottone by McFadden and Nelson. *Id.* ¶ 26. The Eleventh Count incorporates allegations from the Fifth and Seventh Counts and seeks specified damages. *Id.* ¶ 27. The Twelfth Count alleges the same claim against Bottone by McFadden and Nelson. *Id.* ¶ 28. The Third Amended Complaint seeks monetary damages as to all counts, and punitive damages with respect to the Seventh, Eighth, Ninth, Tenth, Eleventh, and Twelfth Counts. *Id.* ¶ 29.

Bottone was arrested on March 9, 2021 and charged with Assault in the First Degree, Reckless Endangerment in the First Degree, Intentional Cruelty to Persons, and Risk of Injury to a Child. *Id.* ¶ 30; ECF No. 39-2. Kingstone is currently providing Bottone with a defense in the Underlying Action based on the Policy, which was in effect at the time of the events at issue. Pl.'s LRS ¶ 31. On July 31, 2022, Kingstone filed its Complaint in this Court, seeking a declaratory judgment against Margaret Bottone, J.F. ppa Kayla Folk, and Kayla Folk. *Id.* ¶ 32. On December 16, 2022, Kingstone filed the First Amended Complaint for Declaratory Judgment which joined McFadden and Nelson as parties due to their addition as parties in the Underlying Action and to amend the Complaint to reflect the new legal name of the minor child. *Id.* ¶ 33.

**Discussion**

As described above, Kingstone seeks a declaratory judgment that it has neither the duty to defend nor indemnify Bottone in the Underlying Action. "[T]he question of whether an insurer has a duty to defend its insured is purely a question of law, which is to be determined by comparing the allegations of the complaint with the terms of the insurance policy." *Misiti, LLC v. Travelers*

*Prop. Cas. Co. of Am.*, 308 Conn. 146, 154 (2013) (internal quotation marks, citation, and alterations omitted).

> "In construing the duty to defend as expressed in an insurance policy, [t]he obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability.... It necessarily follows that **the insurer's duty to defend is measured by the allegations of the complaint....** Hence, if the complaint sets forth a cause of action within the coverage of the policy, the insurer must defend."

*Hartford Casualty Ins. Co. v. Litchfield Mutual Fire Ins.,* 274 Conn. 457, 463 (2005) (emphasis added; internal quotation marks and citations omitted). An insurer's duty to defend is broader than its duty to indemnify. *Cmty. Action for Greater Middlesex Cty., Inc. v. Am. All. Ins. Co.*, 254 Conn. 387, 398 (2000). "If an allegation of the complaint falls even *possibly* within the coverage, then the insurance company must defend the insured." *Hartford Cas. Ins. Co.*, 274 Conn. at 463 (emphasis in original; internal quotation marks and citation omitted). "[Connecticut courts construe] broad policy language in favor of imposing a duty to defend on the insurer." *Id*. at 466. "Where the insurer has sufficient knowledge to show that a claim falls within coverage even though not properly pleaded to [invoke] coverage, the carrier cannot make the face of the complaint argument[.]" *Id*. at 467 (internal quotation marks omitted). Instead, an insurer is required "to provide a defense when it has actual knowledge of facts establishing a reasonable possibility of coverage." *Id*. (internal quotation marks omitted). If an insurer has no duty to defend, it has no duty to indemnify. *DaCruz v. State Farm Fire and Cas. Co.*, 268 Conn. 675, 688 (2004).

"Under Connecticut law, the interpretation of an insurance policy is a question of law for the court." *Arrowood Surplus Lines Ins. Co. v. Westport Ins. Corp.*, No. 3:08-CV-01393 (AWT), 2010 WL 56108, at *2 (D. Conn. Jan. 5, 2010), *aff'd sub nom. Arrowood Surplus Lines Ins. Co. v.*

6

*Westport Ins. Co.*, 395 F. App'x 778 (2d Cir. 2010) (citing *Pac. Indem. Ins. Co. v. Aetna Cas. & Sur. Co.*, 240 Conn. 26, 30 (1997)). "An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy [and] [t]he policy words must be accorded their natural and ordinary meaning[.]" *Aetna Cas. & Sur. Co.*, 240 Conn. at 29–30 (internal quotation marks omitted). Significantly, the Court "must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result[.]" *Arrowood Indem. Co. v. King*, 304 Conn. 179, 187 (2012). Further, "any ambiguity in the terms of an insurance policy must be construed in favor of the insured [but such rule] may not be applied . . . unless the policy terms are indeed ambiguous [and] the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous[.]". *Aetna Cas. & Sur. Co.*, 240 Conn. at 30. The Court will not "torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity[.]" *Hammer v. Lumberman's Mut. Cas. Co.*, 214 Conn. 573, 584 (1990).

### The Policy at Issue

Kingstone attached a copy of the Policy to its motion for summary judgment. ECF No. 39-2 at 14. The Policy's Liability Coverages provides:

**A.  Coverage E – Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

**1.**  Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

    **2.**  Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

. . .

Pl.'s LRS ¶ 2. The Policy also contains the following exclusions:

    **E.**  **Coverage E – Personal Liability And Coverage F – Medical Payments to Others**

Coverages **E** and **F** do not apply to the following:

    **1.**  **Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by an "insured", even if the resulting "bodily injury" or "property damage":

    a.  Is of a different kind, quality or degree than initially expected or intended; or

    b.  Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this Exclusion E.1. does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property;

. . .

    **7.**  **Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

. . .

*Id.* ¶ 3. The first exclusion was amended by Endorsement as follows:

    **E.**  **Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

Paragraph **1. Expected Or Intended Injury** is replaced by the following in all forms and Endorsement **HO 24 73**:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by the "insured", even if the resulting "bodily injury" or "property damage":

a. Is of a different kind, quality or degree than initially expected or intended; or

b. Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this Exclusion **E.1.** does not apply to "bodily injury" resulting from the use of reasonable force by the "insured" to protect persons or property.

. . .

*Id.* ¶ 4. The Policy additionally includes the following:

5. The Policy contains the following definitions:

**A.** In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance.

**B.** In addition, certain words and phrases are defined as follows:

. . .

**2.** "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

. . .

**8.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

a. "Bodily injury"; or

b. "Property damage".

. . .

*Id.* ¶ 5.

9

Kingstone relies upon several distinct policy provisions in seeking summary judgment as to whether it has a duty to defend Bottone in the Underlying Action. First, Kingstone argues that the claims brought in the Underlying Action are not the result of an "occurrence" as that term is defined in the Policy. Accordingly, the claims do not, Kingstone posits, fall within the Policy's scope of coverage in the first instance. Kingstone additionally argues that, even if the claims are within the scope of the Policy's coverage provisions, the Policy has two separate exclusions which apply to the claims brought in the Underlying Litigation. In this vein, Kingstone first cites the exclusion for bodily injury or property damage arising out of sexual molestation, corporal punishment, or physical and mental abuse. Kingstone next cites the exclusion for bodily injury or property damage that is expected or intended by the insured. Pl.'s Mem. in Supp. at 11, ECF No. 39-1.[5]

Bottone is the only Defendant to have filed a response to Plaintiff's Motion for Summary Judgment, and she does not challenge Kingstone's reading of the Policy. Instead, she argues that the complaint in the Underlying Action does not allege intentional conduct, and that there is "factual uncertainty" in the Underlying Action allowing for the possibility of coverage and therefore a duty to defend. Def. Mem. in Opp. at 10, ECF No. 42. Bottone asserts that there were times prior to J.M.N.M.'s injuries in which he was out of her care and custody, and that she had an "incident" before J.M.N.M.'s hospitalization in which she made a sharp stop in her vehicle to avoid a deer. *Id.* at 11. These facts, Bottone argue, indicate an underlying factual question as to whether she or someone else was the cause of J.M.N.M.'s injuries. *Id.*

---

[5] Although the Court does not separately discuss the exclusion for intentional conduct, under Connecticut law, when an "occurrence" is defined as an "accident," whether the alleged act falls within an intentional act exclusion or whether the alleged act is an "occurrence" requires the same ultimate inquiry. *State Farm Fire & Casualty Co. v. Tully,* 322 Conn. 566, 571 n. 8 (2016).

Kingstone responds that there is no legitimate factual uncertainty precluding summary judgment. It argues that the allegations against Bottone in the Underlying Action, read as a whole, unequivocally allege injuries and conduct that are inherently intentional. Pl. Reply in Supp. at 2, ECF No. 43. In addition, Kingstone disputes that there exist facts outside the complaint in the Underlying Action from which the possibility of coverage is established. *Id.* at 7.

The first inquiry is whether the claims brought in the Underlying Action arise out of an "occurrence" as that term is defined in the Policy. As described above, an "occurrence" is defined as an "accident … which results, during the policy period, in bodily injury or property damage." Where the term "accident" is not further defined, as is the situation here, the Connecticut Supreme Court has looked to the ordinary meaning of the word as reflected in dictionaries and the decisions of other courts that have relied upon such definitions. *Vermont Mut. Ins. Co. v. Walukiewicz*, 290 Conn. 582, 594, 966 A.2d 672, 679 (2009). The Supreme Court concluded that "[t]he relevant inquiry in determining whether an accident has occurred is whether the injuries at issue were caused by the intentional design of the insured, or rather, by a sudden, unforeseen event. *Id. See also Palace Laundry Co. v. Hartford Acc. & Indem., Co.,* 27 Conn. Supp. 222, 229, 234 A.2d 640 (Com. Pl. 1967) ("'Accident' is a word of broad scope and includes many unfortunate occurrences not anticipated in the ordinary course of affairs. The wilful act is not embraced by the word") (citing *Hardware Mut. Ins. Co. v. C.A. Snyder, Inc.,* 242 F.2d 64, 68 (3d Cir.1957)).

Although the first six counts of the Third Amended Complaint in the Underlying Action ostensibly sound in "negligence" under Connecticut law, "whether an insurer is obligated to defend an insured is determined by the facts in the underlying complaint, and not the titles assigned to the particular causes of action." *Allstate Ins. Co. v. Jussaume*, 35 F. Supp. 3d 231, 236 (D. Conn. 2014) (internal citations and quotations omitted). The inquiry into an insurer's duty to defend therefore

"focuses on the facts alleged, not legal theories." *Id. See also Tully*, 322 Conn. at 575 ("[E]ven when an action is pleaded as an unintentional tort such as negligence, the court examines the alleged activities in the complaint to determine whether the insured intended to commit both the acts and the injuries that resulted. If so, regardless of the title of the action, the court holds the action to be outside the coverage of the policy") (internal citations and quotations omitted); *State Farm Fire & Casualty Co. v. Bullock,* 1997 WL 309584 (Conn. Sup. 1997) (although labeled as a "negligence" claim, allegations that insured's child assaulted Plaintiff's child did not allege an "accident" under the policy at issue because the "factual allegations manifestly describe an intentional assault."). Merely describing an action in terms of "negligence" is of no consequence when the action itself "can only be deemed intentional" *Middlesex Mutual Assur. Co. v. Rand,* No. CV 9576644, 1996 WL 218698, at *3 (Conn. Sup. Apr. 4, 1996). Put another way, "[a] plaintiff, by describing his or her cat to be a dog, cannot simply by the descriptive designation cause the cat to bark." *Id.*

The specific factual allegations in the Third Amended Complaint are sparse, and perhaps intentionally so.[6] But a fair reading of the complaint as a whole is that Bottone injured the child in a most grievous fashion through extraordinary physical abuse. The Seventh through Twelfth

---

[6] Connecticut courts have also recognized policy considerations, noting that "it would be unwise to allow plaintiffs to force insurers to defend by suing for intentional acts in counts of negligence. *Middlesex Ins. Co. v. Mara,* 699 F. Supp. 2d 439, 458 (D. Conn. 2010). "[A]bsent considerations of insurance ... it would never occur to a lawyer to plead this plainly intentional tort as negligence." *Bullock,* 1997 WL 309584, at *6 (internal citations and quotations omitted). The *Bullock* Court continued: "The plaintiff pleads negligence in a case like this because he wants a deep pocket from which to satisfy a judgment or, even better, to obtain a settlement. Normally when a defendant is sued on a theory that is inadequately pleaded, he gets the claim dismissed or, if the claim is invalid under controlling law, he gets a summary judgment. But in cases such as this the normal antidotes for invalid claims do not work. An insured defendant is often totally committed to the negligence pleading of the plaintiff because as long as the negligence claim is included in the complaint, the insured must be provided a defense on the intentional tort claim, a benefit he would not have if the spurious negligence claim were missing. ... In a case where neither the plaintiff nor the defendant wants the covered claim disposed of, it is most unlikely to disappear." *Id.* at *6 (emphasis added). The Court need not (and so does not) determine whether the plaintiffs in the Underlying Action included the negligence counts for this purpose. The Court includes these policy considerations as part of the impetus under Connecticut law to examine the allegations and not the titles afforded those allegations.

Counts allege that allege that J.M.N.M.'s injuries were caused by the "wanton, reckless and/or malicious acts" of Bottone, including "physical abuse and/or physical neglect," both intentional acts. And it bears repeating that the injuries suffered include skull/head/brain injuries, anoxic injury, hypoxic ischemic encephalopathy, subdural hemorrage to the spinal column, and developmental deficits. J.M.N.M. was less than one year old when he suffered these injuries – and it is difficult if not impossible to envision how his injuries could have resulted from anything other than intentional conduct, to wit, not by accident.

Despite the negligence label affixed to the first six counts, the allegations read as a whole cannot be said to arise out of an "occurrence" as that term is used within the scope of the coverage provision. *See Allstate Ins. Co. v. Wilson*, 18 F. Supp. 3d 156, 163 (D. Conn. 2014) (holding that where underlying complaint's negligence claim was "tied inextricably" to intentional tort claims, insurer owed no duty to defend to insured who was sued for both negligence and sexual assault). Bottone's argument that the complaint in the Underlying Action does not allege intentional conduct (Def. Mem. in Opp. at 10) is unavailing. The severity of J.M.N.M.'s injuries, combined with the allegations of physical abuse and neglect of an infant in Bottone's care, custody, and control, can only plausibly be read as describing intentional conduct on the part of Bottone.

Bottone's attempts to provide alternative possible causes for J.M.N.M.'s injuries similarly fail. "The existence of a duty to defend is determined on the basis of what is found within the four corners of the complaint; it is not affected by facts disclosed by independent investigation, including those that undermine or contradict the injured party's claim." *Stamford Wallpaper Co., Inc. v. TIG Ins.*, 138 F.3d 75, 79 (2d Cir. 1998) (applying Connecticut law) (internal citations and quotations omitted). However, where the insurer has "actual knowledge of facts establishing a

reasonable possibility of coverage," the insurer has a duty to defend. *Hartford Cas. Ins. Co.*, 274 Conn. at 467.

Bottone states via an affidavit attached to her LRS that although she has been criminally charged as a result of her conduct relating to the Underlying Action, she has pled not guilty to all charges and awaits a jury trial. Defs. LRS at 12. She also states that prior to her arrest, she spoke with Watertown Detective Mark Conway and informed him that J.M.N.M was not in her custody for two days during the time period alleged in the Underlying Action and that prior to the alleged date of loss, she was forced to brake her vehicle hard while J.M.N.M. was a passenger in her car. *Id.* Kingstone disputes that these statements serve as outside facts which establish the possibility of coverage. The Court agrees with Kingstone. The fact that Bottone has pleaded not guilty to the assault charges and awaits trial does not change the nature or character of the allegations in the Underlying Action. Bottone's self-serving statements and unfounded assertion that the child's severe and life-threatening injuries were caused when she had to brake to avoid hitting a deer while driving do not bring the Underlying Action within the "possibility" of coverage. And assuming arguendo, that someone other than Bottone herself, i.e. someone with whom she negligently left J.M.N.M, caused the injuries to J.M.N.M., the allegations would fall within the "physical abuse" exclusion under the policy, and no duty to defend would arise.

As discussed above, Kingstone also relies upon the exclusion for injuries "arising out of sexual molestation, corporal punishment or physical or mental abuse." Under Connecticut law, "[i]t is generally understood that for liability for an accident or an injury to be said to 'arise out of' [an occurrence or offense], it is sufficient to show only that the accident or injury 'was connected with,' 'had its origins in,' 'grew out of,' 'flowed from,' or 'was incident to' [that occurrence or offense], in order to meet the requirement that there be a causal relationship between the accident

or injury and [that occurrence or offense]." *QSP, Inc. v. Aetna Cas. & Sur. Co.*, 256 Conn. 343, 374, 773 A.2d 906, 926 (2001), quoting *Hogle v. Hogle,* 167 Conn. 572, 577, 356 A.2d 172 (1975). "To "arise" out of means "to originate from a specified source." Webster's Third New International Dictionary (1961); *see also* Black's Law Dictionary (7th Ed.1999) (defining "arise" as "1. [t]o originate; to stem [from] ... 2.[t]o result [from]")." *Id.*

In *General Insurance Company of America v. Okeke,* 182 Conn. App. 83 (2018), the Connecticut Appellate Court held that an insured son's physical assault of the plaintiff in the underlying litigation was not an "occurrence" despite the negligence label affixed to two of the counts brought against the son.  However, the plaintiff in the underlying litigation had also sued the insured mother of the son accused of the assault, on several theories of negligence.

The Court held that "[u]nlike [the intentional conduct] exclusion … which focuses on the intent of the insured, [the physical abuse][7] exclusion … precludes coverage for an entire class of risks arising out of specified conduct and does not turn on the intent of the insured." *Id.* at 102, quoting *Covenant Ins. Co. v. Sloat,* 2003 WL 21299384 at *694 (Conn. Super. 2003). "[I]n determining whether the complaint alleges a claim for bodily injury arising out of excluded activity, the court must inquire not merely into the status of the parents as parents but into the underlying conduct of their son—'the subject matter of the [incident] *without regard to the involvement of the insured' parents*." *Id.* (emphasis added). Ultimately, because the claims against the mother, even though they sounded in negligence, were determined to "arise out of" physical abuse by the son, the Appellate Court held that they were expressly excluded from coverage. The Court sees no basis upon which a different result should obtain here. Consequently, Kingstone has

---

[7] The physical abuse exclusion at issue in *Okeke* was indistinguishable for purposes of this decision from the physical abuse exclusion contained in Bottone's policy. In *Okeke,* the policy excluded coverage for bodily injury "arising out of physical or mental abuse, sexual molestation or sexual harassment."

no duty to defend or indemnify Bottone, even if, as she posits, the child was physically abused by someone else and her conduct amounts only to negligence.

Because the claims in the Underlying Action cannot plausibly be read to allege accidental or unintentional conduct, they do not constitute an "occurrence" as that term is defined in the Policy. And even if, as Bottone argues, someone else may yet be found to have injured the child, thus implicating only negligence on her part, coverage is excluded under the "physical abuse" exclusion contained in the policy. Accordingly, Kingstone owes Bottone neither a duty to defend nor indemnify with respect to the Underlying Action.

**Conclusion**

Kingstone's Motion for Summary Judgment is GRANTED. Kingstone has neither a duty to defend nor a duty to indemnify Bottone in the Underlying Action. The Clerk of the Court is directed to enter judgment in favor of the Plaintiff and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 27th day of February 2024.

 /s/ Kari A. Dooley
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE